IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF/RESPONDENT

V.                          Case No. 5:14-CR-50041-001-TLB-MEF

JOSE LUIS MARTINEZ                                    DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255

filed February 26, 2016.  (Doc. 68)  The United States filed its Response on April 1, 2016.  (Doc.

71)  No reply has been filed by Petitioner.  The matter is ready for Report and Recommendation.

### I.  Background

On May 19, 2014, a Criminal Complaint was filed against Defendant/Petitioner, Jose Luis

Martinez ("Martinez"), alleging that on or about the dates of November 20, 2013 to May 7, 2014,

in Washington County, Western District of Arkansas, Martinez committed the offenses of

distribution of methamphetamine and aiding and abetting in the distribution of methamphetamine,

in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  (Doc. 1)  Martinez was arrested on May 19,

2014, and he made his initial appearance before the Hon. Erin L. Setser on May 20, 2014.  (Doc. 4)

The Court appointed Roxanne Blake ("Blake"), a Criminal Justice Act panel attorney, to represent

Martinez.  (Docs. 4, 11)  Martinez waived the issues of probable cause and detention, and he was

ordered detained and remanded to the custody of the United States Marshal's Service.  (Docs. 4, 6)

On June 25, 2014, Martinez was named in a eight count Indictment charging him with

conspiracy to distribute methamphetamine (Count One), aiding and abetting the distribution of

methamphetamine (Count Six), and two counts of distribution of methamphetamine (Counts Seven

-1-

and Eight).  (Doc. 12)  Martinez appeared for arraignment with his appointed counsel on July 1, 2014, and he entered a not guilty plea to each count of the Indictment.  (Doc. 17)  Blake made a request for discovery in open court (Doc. 17), and on July 2, 2014 she filed a Request for Rule 16 Discovery (Doc. 22) and a Request for Exculpatory Evidence (Doc. 23).

On July 28, 2014, Blake filed a Motion for Leave to Withdraw as counsel for Martinez, stating that Martinez indicated a lack of confidence in her and had terminated the relationship with Blake.  (Doc. 27)  A hearing regarding the motion was held on July 31, 2014 (Doc. 28), and the Court entered an Order permitting Blake to withdraw as counsel for Martinez (Doc. 29).  On August 1, 2014, Kenneth L. Osborne ("Osborne"), a CJA panel attorney, was appointed to represent Martinez.  (Doc. 30)

The charges brought against Martinez in this case also resulted in the June 3, 2014 filing of a Petition to revoke his supervised release in Case No. 5:08-cr-50077-TLB.  (08-50077; Doc. 58) An initial appearance on the Petition was held on January 26, 2015, at which Martinez waived the issues of probable cause and detention.  (08-50077; Doc. 64)  Osborne was also appointed to represent Martinez in the revocation case.  (08-50077; Doc. 66)

On October 16, 2014, Martinez appeared with counsel before the Hon. Timothy L. Brooks, for a change of plea hearing.  (Doc. 35)  A written Plea Agreement was presented to the Court, and Martinez pleaded guilty to Count Eight of the Indictment charging him with distribution of methamphetamine.  (Doc. 35; Doc. 36, ¶ 1)  The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").  (Doc. 35)

An Initial PSR was prepared by the United States Probation Office on December 22, 2014. (Doc. 42)  On January 2, 2015, the United States advised that it had no objections to the Initial PSR.

-2-

(Doc. 43)  On January 5, 2015, Osborne submitted a Response to the Initial PSR advising that Martinez had no objections to the Initial PSR, but requesting a clarification in paragraph 71 as to the correct age of Miguel Martinez.  (Doc. 44)

On January 6, 2015, a Final PSR was submitted to the Court.  (Doc. 45)  In response to Martinez's request, U. S. Probation incorporated the requested factual correction relating to the age of Miguel Martinez in paragraph 71.  (Doc. 45-1)  The Final PSR determined that Martinez was accountable for 115.6 grams of actual methamphetamine, and Martinez's Base Offense Level was determined to be 30.  (Doc. 45, ¶¶ 41, 42, 47)  No other adjustments were made (Doc. 45, ¶¶ 48-51), resulting in an Adjusted Offense Level of 30 (Doc. 45, ¶ 52).  After a three level reduction for acceptance of responsibility, Martinez's Total Offense Level was determined to be 27.  (Doc. 45, ¶¶ 54-56) Martinez's criminal history score of 5 placed him in Criminal History Category III.  (Doc. 45, ¶¶ 66-68)  The statutory range for the offense of conviction provided for a maximum of 20 years imprisonment.  (Doc. 45, ¶ 95)  Martinez's advisory guideline range was determined to be 87 to 108 months imprisonment.  (Doc. 45, ¶ 96)

Martinez appeared for sentencing on February 13, 2015.  (Doc. 52)  The Court made inquiry that Martinez was satisfied with his counsel, final approval of the Plea Agreement was expressed, a two level downward departure was granted upon the Government's motion, and the Court imposed a sentence of 70 months imprisonment, three years supervised release, a $3,000.00 fine, and a $100.00 special assessment.  (Doc. 52)  Judgment was entered by the Court on February 13, 2015. (Doc. 50) Martinez also admitted the allegation made in the Petition to revoke his supervised release in Case No. 5:08-cr-50077-TLB on February 13, 2015; the Court found Martinez to be in violation and revoked supervised release; and, the Court imposed a sentence of 15 months imprisonment, to

run consecutively to the term of imprisonment imposed in the present case.  (08-50077; Docs. 67, 68)

Martinez pursued a direct appeal from the Judgment.  (Doc. 55)  On appeal, Martinez's counsel moved to withdraw and filed a brief under *Anders v. California*, 386 U.S. 738 (1967), generally arguing that the District Court abused its discretion in sentencing Martinez, and specifically suggesting that the Court procedurally erred in calculating Martinez's criminal history points.  (Doc. 67-1, p. 2)  In an Opinion filed on September 21, 2015, the Eighth Circuit found that the District Court committed no procedural error in sentencing Martinez, and that no abuse of discretion occurred.  (Doc. 67-1)  A Mandate was issued on September 21, 2015.  (Doc. 67)

On February 26, 2016, Martinez timely filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion").  (Doc. 68)  The Motion raises a sole ground for relief: that counsel provided ineffective assistance when he failed to present mitigating evidence during sentencing.  (Doc. 68, p. 3)  Martinez asserts that he instructed his counsel to present certain facts at his sentencing hearing, that his counsel refused to do so, and that had this information been brought to the Court's attention there is a reasonable probability that the Court would have imposed a lesser sentence.  (Doc. 68, pp. 3-4)

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court

-4-

finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).   A thorough review of Martinez's Motion and the files and records of this case conclusively shows that Martinez is not entitled to relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice without an evidentiary hearing.

### A.  Ineffective Assistance of Counsel Claim

Martinez asserts that he was denied the effective assistance of counsel when his counsel failed to present mitigating evidence during sentencing.  (Doc. 68, p. 3)  He maintains that he "instructed counsel to present certain facts" surrounding his case to the Court, and that his counsel refused. (Doc. 68, p. 3) In essence, the "certain facts" his counsel failed to argue at sentencing were that the DEA failed to fulfill a promise while Martinez was working as a confidential informant in a case involving his brother, thereby causing Martinez to be threatened by and forced to traffic drugs for the cartel, with the end result being his conviction in the present case.  (Doc. 68, pp. 3-6)  The United States counters that Martinez's counsel exercised reasonable trial strategy to not present evidence blaming the DEA or cartel for Martinez's criminal activities.  (Doc. 71, pp. 8-9)  The United States further argues that Martinez is unable to demonstrate that had this information been presented to the Court the outcome would have been any different, and that there is no reasonable probability that presentation of the complained of mitigating evidence would have lessened Martinez's sentence.  (Doc. 71, p. 9)  The United States points out that Martinez raised the same

argument during his sentencing in Case No. 5:08-cr-50077-TLB, and the Court there rejected Martinez's attempt to mitigate his sentence.  (Doc. 71, pp. 9-10)

To prove a claim of ineffective assistance of counsel, Martinez must demonstrate both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689.  To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

### 1.  Failure to Present Mitigating Evidence at Sentencing

Martinez argues that his counsel was ineffective when he refused to advise the Court at sentencing of certain facts in explanation of how Martinez became involved with the illegal drug trade.  (Doc. 68, p. 3)

For supporting facts, Martinez alleges that he first became involved in the illegal drug trade when he agreed to work as a confidential informant with DEA Agents in Fayetteville, Arkansas, in order to assist his brother (Raoul Martinez) obtain a Rule 35 sentence reduction.  (Doc. 68, p. 3)  He alleges that after participating in two controlled buys, he next participated in a cash delivery transaction for the DEA Agents involving $70,000.  (*Id*.)  It was this cash delivery transaction, Martinez says, in which "the DEA Agents failed to fulfill its promises to [Martinez], which led directly to [Martinez's] involvement in the illegal drug trade." (*Id*.)

### a.  No Deficient Performance

In his Affidavit, Osborne states that the information concerning the DEA cash delivery transaction was discussed at length with Martinez.  (Doc. 71-1, p. 1)  Osborne states that he discussed Martinez's options with him, including Martinez's right to testify at his sentencing, and that the Court also made it clear to Martinez that he had a right to allocute and say whatever he wished at sentencing.  (*Id*.)  Osborne confirms that it was his advice that Martinez should not do anything to suggest that he was not fully responsible for the crime he was convicted of, and that it was his opinion that "the last thing you want to do is blame your behavior on someone else."  (*Id*.)  Osborne states that "it is my firm belief that pointing the finger at the DEA would not have helped [Martinez] at the sentencing in any manner and likely would have made his sentencing worse."  (*Id*.)  Osborne notes that Martinez was out on supervised release when he conducted additional criminal activity, that there was "simply no good way to address that," and "it was my belief that the proper strategy would be to take full responsibility for his actions rather than to suggest somebody else made him do it."  (*Id*.)

"Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories.  An attorney must make a reasonable investigation in preparing a case or make a reasonable decision not to conduct a particular investigation."  *Foster v. Lockhart*, 9F.3d 722, 726 (8th Cir. 1993) (citing *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.), *cert. denied*, 112 S.Ct. 431 (1991).  Osborne's Affidavit shows that he made a thorough investigation of the mitigating evidence Martinez wanted him to present.  Osborne "discussed at length with the Defendant" the circumstances of the $70,000 cash delivery transaction with the DEA, as well as Martinez's contention that the DEA's conduct

led to a threat against him by the cartel necessitating his subsequent involvement in illegal drug trafficking. Counsel further discussed options with Martinez, and he advised him of his right to allocution at sentencing. Osborne discussed with Martinez the fact that the instant offense had been committed while Martinez was on supervised release from an earlier drug conviction, and that there was "simply no good way to address that." It was Osborne's "firm belief" that blaming the DEA would not have helped Martinez at sentencing, and that doing so likely would have made his sentencing worse. A worse outcome for Martinez would have resulted if the argument Martinez wanted to present to the Court had been made and the Court then determined Martinez was not actually accepting responsibility for his own criminal activity, thereby resulting in the loss of Martinez's three-level reduction for acceptance of responsibility.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 690. Because of the difficulties inherent in making such an evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" and, a defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id*. The Court in *Strickland* commented that "there are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id*. Recognizing this reality, the Court made clear that "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id*.

Here, in light of all the circumstances, Osborne made a sound strategic decision not to present

-8-

evidence at sentencing blaming the DEA or cartel for Martinez's criminal activities. It simply cannot be said that Osborne's strategic decision not to present such evidence at sentencing was so below an objective standard of reasonableness that his performance was ineffective. Martinez has not, therefore, established the deficient performance prong of the *Strickland* analysis. This could end the inquiry, as there would be no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim). Nevertheless, as discussed below, Martinez cannot demonstrate that the outcome would have probably been more favorable to him had the evidence in question been presented at sentencing.

### b.  No Prejudice

Martinez's advisory guideline range was 87 to 108 months imprisonment. (Doc. 45, ¶ 96) The Government filed a Motion for Downward Departure Pursuant to U.S.S.G. § 5K1.1 (Doc. 51), and the Court granted the motion and awarded Martinez a two-level downward departure (Doc. 52, p. 1). Following the two-level downward departure, the Court imposed a guidelines sentence of 70 months imprisonment. (Docs. 52, p. 2; 53)

Regarding prejudice, Martinez offers his conclusory allegation that "had this Court considered this information, there is a reasonable probability that this Court would have imposed a lesser sentence on Movant, or would have run the sentence Movant received on his supervised release violation concurrent to Movant's drug trafficking sentence." (Doc. 68, pp. 3-4) The United States submits that "quite the opposite is true," as Martinez raised the same argument in Case No. 5:08-cr-50077-TLB and the Court rejected his attempt to mitigate his sentence. (Doc. 71, p. 9)

Concerning Martinez's contention that the Court would have run the sentence he received on his supervised release violation concurrent to his sentence in this case, that contention runs counter to the provisions of the United States Sentencing Guidelines.  U.S.S.G. § 7B1.3(f) provides: "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release *shall be ordered to be served consecutively* to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release." (Emphasis added.)  Thus, even if the evidence in question had been presented at Martinez's sentencing, the Guidelines' advisory policy statement is that any sentence imposed for the supervised release revocation shall be ordered to be served consecutively to any other sentence a defendant is serving.  Given that Guidelines' provision, the undersigned cannot conclude that a reasonable probability existed that the Court would have ordered Martinez's sentences to run concurrently had the evidence been presented.

Of greater significance to the Court is the fact that Martinez had already unsuccessfully attempted to mitigate the consequences of his criminal activity with the same argument he now faults Osborne for not presenting in this case.  At his sentencing on June 15, 2009, in Case No. 5:08-cr-50077-TLB, Martinez made the identical argument and presented testimony in support of his bid to mitigate his sentence in that case.  (08-50077; Doc. 44)  Testimony during the sentencing hearing showed that not only was Martinez dealing drugs to pay back the cartel the $70,000, but also to pay his own bills and to support his fugitive brother (Ray Maseos).  (08-50077; Doc. 44, pp. 33-34)  His counsel at that time, Blair Brady ("Brady"), candidly stated to the Court that "I'm not here to tell the Court that every dollar that he made by selling methamphetamine went to a pre-existing drug debt," "[t]hat's a little far-fetched ..." (08-50077; Doc. 44, p. 41)  Sensing that he was skating onto thin ice

-10-

with his argument, Brady asked rhetorically, "[a]m I doing so in such a way as to deflect responsibility for these actions?"  He then argued, "I am not[,] [h]e has accepted responsibility." (08-50077; Doc. 44, p. 42)  Brady noted that there, as here, Martinez benefitted from acceptance of responsibility, and from a two-level downward departure for his cooperation. (*Id*.)

Martinez testified in support of his attempt to mitigate his sentence in Case No. 5:08-cr-50077-TLB.  (08-50077; Doc. 44, pp. 45-52)  When questioned by the Court about "stepping up" into the "family business" of dealing drugs, Martinez acknowledged that his brothers, Ray and Raoul, were involved in the drug business, but he denied that he then "stepped right in and took over," claiming instead that he was "forced to - - to step up." (08-50077; Doc. 44, p. 56)  Upon hearing the testimony from Martinez and others, the Court stated, "I don't buy for a moment the argument that you did this just because your brothers owed a drug debt," and "I don't accept the notion that the blame lies with the DEA folks."  (08-50077; Doc. 44, pp. 59-60)  The Court went on to express reservations about the Government's motion for a two-level downward departure, saying "I think the motion is still good, although I'm not sure I would have felt as strongly about it as I did when I granted the motion had I heard some of the testimony that I then heard and some of your comments."  (08-50077; Doc. 44, p. 60)

Considering that Martinez already presented in an earlier case the evidence and argument he now faults Osborne for not presenting at sentencing in the instant case, and the Court there firmly rejected his attempt to mitigate his sentence and, even further, expressed reservations that Martinez should benefit from a downward departure, the undersigned agrees with the United States that it is "pure speculation" that presenting the same evidence and argument in this case would have resulted in a reduction of his sentence.  "It is not sufficient for a defendant to show that some error had some

-11-

'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693).  Actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (mere possibility does not equate to actual prejudice).

Martinez has shown nothing more than mere possibility and hopeful speculation.  It is insufficient to establish prejudice under *Strickland*.

### C.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief."  *Nguyen v. United States*, 114 F.3d 699, 703 (1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  Such are the circumstances in this case as all issues raised by Martinez in his § 2255 Motion can be resolved by reviewing the record.

Martinez has failed to demonstrate Osborne's strategic decision - not to present evidence and argument shifting blame to the DEA and cartel - fell below the wide range of reasonable professional assistance demanded of attorneys in criminal cases.  Moreover, Martinez has failed to show prejudice as this identical argument was previously made by Martinez at sentencing in an earlier case and was thoroughly rejected by the Court.  Accordingly, the undersigned recommends the summary dismissal of Diaz's § 2255 Motion without an evidentiary hearing.

### III.  Conclusion

For the reasons and upon the authorities discussed above, Martinez's claim is unsupported

by the record in this case.  The undersigned recommends that Martinez's Motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of May, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE